## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TAD VAN PELT, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 1128 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BONA-DENT, INC., a New York corporation | ) | |
| d/b/a BONADENT DENTAL | ) | |
| LABORATORIES; BRUCE BONAFIGLIA, | ) | |
| Individually; BRUCE HENRY PROPERTIES, | ) | |
| LLC, a New York limited liability company | ) | |
| d/b/a BONADENT DENTAL | ) | |
| LABORATORIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tad Van Pelt worked as a National Sales Representative for BonaDent, Inc., a dental laboratory. Van Pelt has sued BonaDent for breach of contract, fraudulent inducement, retaliatory discharge, violations of the Illinois Whistleblower Act, post-termination retaliation, and common law defamation. Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## Factual Background

The following facts are alleged by Van Pelt and presumed true for the purposes of the motion to dismiss. *See Manistee Apartments, LLC v. City of Chi.*, 844 F.3d 630, 633 (7th Cir. 2016).

The relationship between Van Pelt and BonaDent began when BonaDent contacted Van Pelt and offered him a sales job. 2d Am. Compl. ¶ 9, ECF No. 32. When Van Pelt rejected the

officer, BonaDent's Chief Executive Officer, Bruce Bonafiglia, then told Van Pelt that BonaDent would create a role for him as National Sales Director. *Id.* ¶ 9.

Bonafiglia and Van Pelt met on several occasions to discuss the position, including the salary and work environment. *Id.* According to Van Pelt, during these conversations, Bonafiglia concealed the fact that, within the previous twelve months, he had fired two other employees who had served in the National Sales Director position. *Id.* ¶ 11. Bonafiglia withheld this information despite the fact that Van Pelt told him that Van Pelt already had a great job and would only accept the offer if the position at BonaDent was in his and his family's best interest. *Id.* ¶ 16. Along these lines, during their discussions, Bonafiglia stated that Van Pelt would be have the position for a long time. *Id.* ¶ 13.

Bonafiglia eventually offered Van Pelt the position. *Id.* ¶¶ 9–10. After discussing the opportunity with his wife, Van Pelt accepted the offer. *Id.* ¶¶ 11, 14. Van Pelt acknowledged the employment relationship by signing a letter on November 16, 2015, that provided details about the job description and compensation plan. *Id.* ¶ 14. His yearly salary was $140,000.00. *Id.*, Ex. 3, 6/28/17 Employment Verification, ECF No. 32-3, at p. 2.

Van Pelt began working for BonaDent on November 30, 2015. *Id.* ¶ 15. As National Sales Director, he supervised employees, constructed a sales marketing plan, travelled, and attended meetings. *Id.*

In December 2015, BonaDent purchased a laboratory in Chicago, and Van Pelt was instructed to have a desk at the lab in order to supervise the operations. *Id.* ¶¶ 20–21. In addition to his other duties, Van Pelt also was asked to perform human resources responsibilities at the lab. *Id.* ¶ 22. During the course of fulfilling his responsibilities at the lab, Van Pelt came to believe that some of the lab workers lacked the proper documentation to work in the United

States.  *Id.*  He expressed his concern to Bonafiglia, who told him that one of the workers was in the process of obtaining citizenship by marrying a United States citizen and that Van Pelt should continue his role at the lab.  *Id.*; *id.* ¶ 23.  Van Pelt continued to work at the lab and perform his assigned duties, but he refused to fulfill his human resources role with regard to those employees who he believed were working illegally.  *Id.*

On one occasion, Van Pelt smelled the odor of gas at the lab, informed other employees that there must be a gas leak in the area, and left to work offsite because he felt uncomfortable working at the lab.  *Id.* ¶ 24.  Bonafiglia reprimanded Van Pelt and stated that he had showed poor leadership by leaving the lab and his fellow employees.  *Id.* ¶ 25.

After working for BonaDent for sixty days, Van Pelt received a performance review on February 9, 2016.  *Id.* ¶ 27.  The written review, which is attached as an exhibit to the second amended complaint, has been redacted to the point of being practically illegible.  *See id.*, Ex., BonaDent 60 Day Review, ECF No. 32-2 at pp. 38–39.  To the extent that it can be read, the review states that Van Pelt was still developing and learning about the BonaDent culture and work environment.  *Id.* at p. 38. The portion addressing "areas needing development" is redacted. *Id.* at p. 39.  One sentence out of three paragraphs of the "overall evaluation" portion of the review is legible and states: "The team remains confident that Tad is going to be a good fit for the position of National Sales Director."  *Id.*

Ten days later, during a telephone call between Bonafiglia and Van Pelt on February 19, 2016, Van Pelt brought up the gas odor incident and told Bonafiglia that he felt that he was being put in the awkward position of having to justify why he had left a work environment that he believed was unsafe.  *Id.* ¶ 28.  Van Pelt alleges that he told Bonafiglia that he would not work in an unsafe environment.  *Id.*  Van Pelt also alleges that, during the conversation, he iterated his

concerns about the presence of illegal workers and refused Bonafiglia's request to be involved in any documentation of them. *Id.* According to Van Pelt, Bonafiglia terminated his employment, told him that he would be hearing from human resources, and abruptly hung up the phone. *Id.* On February 19, 2016, Van Pelt received a termination letter from Jenna Crandall, BonaDent's Director of Human Resources, stating that he had been terminated effective February 16, 2016. *Id.*, Ex., 2/19/16 Termination Letter, ECF No. 32-2 at p. 40.

In an employment verification form dated October 3, 2016, BonaDent's Human Resource Coordinator, Michelle Grillone, stated to an employment verification company that Van Pelt was eligible for rehire, and she made no mention of any attendance issues. *Id.*, Ex. 2, 10/3/16 HireRight Employment Verification Form, ECF No. 32-2, at p. 43. Van Pelt alleges that subsequently, however, BonaDent's Payroll Administrator, Autumn Jennex, made a false statement about him to an employment verification company that caused harm to his reputation and career. *Id.* ¶ 75; *id.*, Ex. 3, 6/28/17 Employment Verification, ECF No. 32-3, at p. 2. Although Jennex rated Van Pelt's attendance as "Satisfactory", she also stated on the same form that he was "not eligible for rehire due to attendance issues." *Id.*

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). The federal notice pleading standard requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that

4

he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are accepted as true, and courts must draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). In a motion to dismiss, a complaint's factual allegations may be supplemented by "documents that are attached to the complaint," as well as "documents that are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 10(c). In a diversity case governed by Illinois law, a court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002).

## I.     Breach of Contract

In Count I, Van Pelt alleges that he had an oral employment contract for an unspecified duration with BonaDent and that BonaDent breached the contract by terminating him. BonaDent argues that Van Pelt has failed to allege the formation of an oral contract for a particular duration, and the Court agrees.

Illinois law presumes that employment is at-will where the employee is hired without a fixed term. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987). Absent a contract to the contrary, either the employee or the employer may terminate the relationship at any time, for any reason or no reason. *Harris v. Eckersall*, 771 N.E.2d 1072, 1075 (2002). Accordingly, an employee bears the burden of overcoming the presumption of at-

5

will employment by showing that the parties contracted otherwise. *Kiddy–Brown v. Blagojevich*, 408 F.3d 346, 363 (7th Cir. 2005). And generally speaking, "oral employment contracts . . . are viewed with more skepticism than their formal, written counterparts." *Tolmie v. United Parcel Serv.*, 930 F.2d 579, 581 (7th Cir. 1991).

"Under Illinois law, oral employment contracts must satisfy the traditional requirements of contract formation. *See McInerney v. Charter Golf, Inc*., 680 N.E.2d 1347, 1349 (Ill. 1997) (citing *Duldulao*, 505 N.E.2d at 318). When an "alleged contract is based upon oral assurances, the plaintiff must establish that the offer was 'clear and definite' and supported by adequate consideration." *Taylor v. Canteen Corp*., 69 F.3d 773, 782 (7th Cir. 1995) (quoting *Kercher v. Forms Corp. of Am., Inc.*, 630 N.E.2d 978, 981 (Ill. App. Ct. 1994)). An offer's terms are clear and definite "as long as 'an employee would reasonably believe that an offer has been made.'" *Kiddy–Brown*, 408 F.3d at 363 (quoting *Duldulao*, 505 N.E.2d at 318). "The test is an objective one." *Id.*

Here, Van Pelt has failed to allege an oral employment contract for a specific duration. *See* 2d Am. Compl. ¶¶ 9–14, 33–42. As an initial matter, all of the written communication provided to him regarding the position apprised him of the at-will nature of his employment relationship with BonaDent. For example, the job description given to Van Pelt clearly states that it "in no way is a contract of employment." *See* 2d Am. Compl., Ex. 1, Job Description Letter, ECF No. 32-1, at p 4.; *id.*, Ex. 2, Signed Job Description Letter, ECF No. 32-2, at p. 3, 18. In addition, BonaDent's letter regarding the compensation arrangement provides that Van Pelt acknowledged that the letter "does not constitute a promise of employment with [BonaDent] for any specific or set term or duration, nor does it otherwise alter my status as an 'employee at will,' which means that I may resign or BonaDent may terminate my employment at any time, for any

reason with or without notice or cause . . . ." *Id.*, Ex. 2, Structure, Bonus, and Commissions Letter, ECF No. 32-2, at p. 6. Furthermore, the signed Non-solicitation Agreement states in pertinent part:

> Employee understands and agrees that his employment with BonaDent is "at will" and may be terminated at any time with or without notice or cause. Nothing in this Agreement will confer any right to Employee to continue his employment with BonaDent or interfere with or restrain BonaDent's right to terminate his employment at any time and for any reason whatsoever, with or without cause, and with or without notice.

*Id.* at p.10.

Moreover, Van Pelt does not allege that Bonafiglia provided any clear and definite offer term regarding the duration of his employment during their conversations. At most, Van Pelt alleges that Bonafiglia discussed the salary, opportunity, and work environment at BonaDent and stated that Van Pelt would have longevity in the National Sales Director position. *Id.* ¶¶ 10, 12. When viewed under the objective test, no reasonable person would have believed that Bonafiglia's words constituted a clear and definite contract term for any particular length of employment at BonaDent. Accordingly, the Court grants BonaDent's motion to dismiss Count I and dismisses it without prejudice.

## II.    Fraud

Next, in Count II, Van Pelt claims that BonaDent and Bonafiglia engaged in fraud to lure him to work for BonaDent. "In Illinois, a plaintiff can base a common law fraud claim on a fraudulent misrepresentation or on a fraudulent concealment of a material fact." *Future Envtl., Inc. v. Forbes*, No. 13 C 709, 2014 WL 3026485, at *4 (N.D. Ill. July 3, 2014). To plead fraud based on a fraudulent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) made with intent to induce the

other party to act; (4) action by the other party in reasonable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980); *see Regensburger v. China Adoption Consultants, Ltd*., 138 F.3d 1201, 1207 (7th Cir. 1998). To plead a fraud claim based on fraudulent concealment, a plaintiff must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, *under circumstances creating a duty to speak*; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002) (emphasis added).

First, Van Pelt alleges that Bonafiglia misrepresented that Van Pelt would have longevity as National Sales Director of BonaDent in the future. But statements regarding intentions to perform future conduct, even if they are made without the present intention to perform, are generally not a basis for fraud. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 682 (Ill. 1989). "Such statements are regarded as mere expressions of opinion, promises, or conjecture upon which the other party has no right to rely." *Madison Assocs. v. Bass*, 511 N.E.2d 690, 699 (Ill. App. Ct. 1987). Accordingly, fraud based on future acts "is not actionable in Illinois unless the promise is part of a 'scheme' to defraud." *Gen. Elec. Credit Auto Lease Inc., v. Jankuski*, 532 N.E.2d 361, 384 (Ill. App. Ct.1988) (quoting *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 641 (Ill. 1977). And, under Illinois law, a "scheme to defraud requires a pattern of fraudulent statements or one particularly egregious fraudulent statement." *BPI Energy Holdings, Inc., v. IEC (Montgomery) LLC*, 664 F.3d 131, 136 (7th Cir. 2011) (applying Illinois

law) (internal quotations and citations omitted); *see Petrakopoulou v. DHR Int'l, Inc.*, 660 F. Supp. 2d 935, 939 (N.D. Ill. 2009).

Here, Van Pelt does not allege that the misrepresentation regarding the expected length of his tenure were part of a larger scheme of fraudulent acts intended to defraud. 2d Am. Compl. ¶¶ 11–12; *see, e.g., Petrakopoulou*, 660 F. Supp. 2d at 939 (denying motion to dismiss where plaintiff alleged that defendant's alleged misrepresentations were part of a larger scheme to lure executive recruiters away from competing firms by means of sham employment agreements). Nor does he allege anything other than run-of-the-mill promissory fraud. *See Elmhurst v. Dempster LLC v. Fifth Third Bank*, No. 13 C 3125, 2013 WL 5408851, at *7 (N.D. Ill. Sept. 26, 2013) ("[M]a[king] a promise to purchase property without the intent to do so . . . cannot be considered 'particularly egregious.'"). The Court therefore grants BonaDent's motion to dismiss Van Pelt's fraud claim based on these affirmative misrepresentations and dismisses the claim without prejudice.

Second, Van Pelt bases his fraud claim on fraudulent concealment. In particular, Van Pelt alleges that Bonafiglia misrepresented that the National Sales Director position was newly created for Van Pelt, thereby concealing the fact that two other employees had also briefly held the same title within the previous twelve months.

As noted above, in order to allege fraud by concealment of a material fact, a plaintiff must allege that "one party to a negotiation has a duty, arising out of a confidential or fiduciary relationship, to reveal hidden facts to the other party." *Lillien v. Peak6 Invs., L.P.*, 417 F.3d 667, 672 (7th Cir. 2005). "A duty to disclose may be based on a fiduciary relationship or a relationship of trust and confidence where 'defendant [is] in a position of influence and

superiority over plaintiff.'"  *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (quoting *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)).

BonaDent correctly notes that a prospective employer does not have a confidential or fiduciary relationship with a prospective employee that gives rise to a duty to speak.  *See Lillien*, 417 F.3d at 672 (holding that no confidential or fiduciary relationship existed where plaintiff asserted that a company lured him into accepting employment as general counsel by stating that an IPO was imminent but concealing that the prior CFO had quit amidst the company's financial troubles).  And the Second Amended Complaint lacks any allegation that BonaDent and Van Pelt shared a confidential or fiduciary relationship that would give rise to a duty to disclose that two other employees had also briefly held the same title within the previous twelve months.  Accordingly, Van Pelt has not stated a claim for fraud based on fraudulent concealment, and BonaDent's motion to dismiss Count II is granted.

### III.    The Illinois Whistleblower Act

In Count IV, Van Pelt also alleges that BonaDent and Bonafiglia violated the Illinois Whistleblower Act ("IWA").  First, Van Pelt contends that BonaDent fired him for disclosing information to Bonafiglia about violations of immigration laws.  2d Am. Compl. ¶ 22. In addition, he alleges that he was fired for his refusal:  (1) to work in a laboratory during a gas leak and (2) to fulfill his role as human resources manager in the Chicago laboratory with regard to employees he believed were ineligible to work in the United States.  *Id.* ¶¶ 22–26, 28. Defendants move to dismiss the IWA claims on numerous grounds.

The IWA provides, in pertinent part, that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or

federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b). The Act also provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." *Id.* 174/20.

As an initial matter, Bonafiglia argues that there is no individual liability under the IWA. But, on January 1, 2008, the IWA's definition of the term "employer" was amended to include "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, . . . *and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees*." *Id.* 174/5 (emphasis added). The unambiguous and plain language of the IWA includes Bonafiglia because he is alleged to have been acting on behalf of the BonaDent corporation and within the scope of his authority when he fired Van Pelt. 2d Am. Compl. ¶ 28; *see Hower v. Cook Cty. Sheriff's Office*, No. 15 C 6404, 2016 WL 612862, at *3 (N.D. Ill. Feb. 16, 2016) (finding individual liability under the IWA); *Bello v. Vill. of Skokie*, No. 14 C1718, 2014 WL 4344391, at *8–9 (N.D. Ill. 2014) (same). Accordingly, Bonafiglia's motion to dismiss the IWA claim is denied.

Next, Defendants argue that Van Pelt has failed to allege that he disclosed any information to a government or law enforcement agency as is required under 740 Ill. Comp. Stat. 174/15(b). In this, Defendants are correct. Although Van Pelt alleges that he told Bonafiglia that some workers in the Chicago laboratory were ineligible to work in the United States and that, on one occasion, the laboratory smelled like there had been a gas leak, he does not allege that he disclosed any of this information to a government or law enforcement agency. *See* 2d Am. Compl. ¶¶ 22–28, 61, 64; *see also Thomas v. Guardsmark, LLC*, 487 F.3d 531, 538 (7th Cir. 2007) (stating that 174/15(b) requires disclosure to a government or law enforcement agency).

11

Accordingly, the Court grants the motion to dismiss Count II in this regard and dismisses the claim without prejudice.

In addition, Defendants argue that Van Pelt has failed to state an IWA claim based on his refusal to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. *See id.* 174/20. First, with regard to the gas incident, Van Pelt has failed to allege what particular state or federal law, rule or regulation was violated. 2d Am. Compl. ¶¶ 24–26, 28, 60. In his response to the motion to dismiss, Van Pelt generally asserts that the Occupational Safety and Health Administration ("OSHA") "mandates that an employer provide a safe place to work." Pl.'s Resp. Br. at 9. But even if Van Pelt had mentioned OSHA in his complaint, he has not stated which OSHA regulation was violated. He merely alleges that on one occasion, "he left work because of the odor of gas." *Id.* ¶ 24. And although, according to Van Pelt, his leaving was his refusal to "participate in illegal activity" and "jeopardize his safety," *id.* ¶¶ 24, 28, 60, Van Pelt does not allege that the gas smell persisted, that he refused to work onsite thereafter, or that the laboratory was an unsafe work environment in general. Rather, he apparently returned to work at the laboratory. *Id.* ¶ 22. Without more, the allegation that Van Pelt smelled an odor of gas at the Chicago laboratory on one occasion does not allege a violation of a state or federal law, rule, or regulation. Nor does his leaving on a single occasion because of the odor constitute a refusal to participate in illegal activity. The Court therefore grants the motion to dismiss Van Pelt's IWA claim under 740 Ill. Comp. Stat. 174/20 based on the gas incident.

Second, Van Pelt alleges that, once he discovered that some employees were unauthorized to work in the United States, he refused to fulfill his assigned human resources role as to them, 2d Am. Compl. ¶ 22, and refused Bonafiglia's "request to be involved in the documentation of illegal employees," *id.* ¶ 28. As to this claim, Van Pelt has sufficiently stated a

claim that he reasonably believed that employment of unauthorized aliens was unlawful, *see* 8 U.S.C. § 1324a(2). The Court thus denies the motion to dismiss his IWA claim against Bonafiglia and BonaDent under 740 Ill. Comp. Stat. 174/20 to this extent.

## IV. Retaliatory Discharge

Van Pelt also claims that BonaDent and Bonafiglia discharged him in retaliation for his refusal to act as a human resources manager and to take other actions relating to the purported illegal workers. He also alleges that he was fired for refusing to work in a lab because of the gas odor.

As a threshold issue, "[t]he Illinois Supreme Court has refused to extend the tort of retaliatory discharge to include individual liability for supervisors who terminate employees." *Thomas v. Guardsmark, Inc.*, No. 02 C 8848, 2003 WL 57028, at *2 (N.D. Ill. Jan. 7, 2003) (citing *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 570 (Ill. 1998)). "[T]he tort of retaliatory discharge may be committed only by the employer. The agent or employee who carries out the employer's decision to fire will not be subject to personal liability for retaliatory discharge." *Buckner*, 694 N.E.2d at 570. Accordingly, Bonafiglia's motion to dismiss Count III is granted, and the count is dismissed with prejudice as to Bonafiglia.

As for BonaDent, as stated above, "an employer in Illinois may discharge an at-will employee at any time and for any reason." *Vulpitta v. Walsh Const. Co.*, 61 N.E.3d 1069, 1079 (Ill. App. Ct. 2016), *appeal denied*, 77 N.E.3d 86 (Ill. 2017). That said, the Illinois Supreme Court has carved out an exception to this general rule and has "recognized a limited and narrow cause of action for the tort of retaliatory discharge." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). "To state a valid retaliatory discharge cause of action, an employee must allege

that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Id.*

Nevertheless, in the forty years since the creation of the tort, a valid retaliatory discharge claim based on "a clear mandate of public policy" has been recognized by the Illinois Supreme Court in only the following contexts: (1) where an employee was discharged for seeking workers' compensation benefits, *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 360–61 (Ill. 1978); (2) where an employee was fired for disclosing information to a law enforcement agency in violation of the IWA, *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879–80 (Ill. 1981); and (3) where an employee was discharged for refusing to handle radioactive material even though the company's operations violated Nuclear Regulatory Commission regulations, *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (1985).

In *Palmateer*, the Illinois Supreme Court stated that the clear mandate of public policy underlying the IWA is the policy that favors citizens' volunteering information regarding criminal activity to law enforcement agencies and assisting officials in the investigation and prosecution of the suspected crime. 421 N.E.2d at 880. Relying on *Palmateer*, BonaDent argues that Van Pelt fails to state a claim of retaliatory discharge because he does not allege that he volunteered information regarding suspected criminal activity, let alone a violation of any law, rule, or regulation, to any law enforcement agency.

However, in *Belline v. K-Mart Corp.*, the Seventh Circuit concluded that the Illinois Supreme Court would recognize a retaliatory discharge claim where an employee is fired for reporting a supervisor's purported criminal activity to the employer, even though the employee did not report it to a law enforcement agency. 940 F.2d 184, 188 (7th Cir. 1991) (stating that "[t]he great majority of courts interpreting Illinois law hold that an employee who reports

14

unlawful conduct to an employer is protected under the tort of retaliatory discharge." and listing cases). "To hold otherwise would be to create perverse incentives by inviting concerned employees to bypass internal channels altogether and immediately summon the police." *Id.* at 187.[1] Moreover, it is not necessary that the alleged activity in fact constituted a criminal violation, and a plaintiff need only allege that he held a good faith belief that a crime had been committed. *See Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) ("[P]ersons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of being wrongfully discharged.").

Following the reasoning in *Belline*, the Court denies BonaDent's motion to dismiss on the ground that Van Pelt's retaliatory discharge fails because he reported the illegal workers and odor of gas to his supervisor, rather than to a law enforcement agency. Furthermore, Van Pelt alleges that he refused Bonafiglia's request to be involved in the presumably improper documentation of illegal employees, see 2d Am. Compl. ¶ 28, which constitutes criminal activity, see 8 U.S.C. § 1324a(2). Viewing Van Pelt's allegations in this regard and drawing all reasonable inferences in his favor, he has sufficiently alleged a retaliatory discharge claim, and the Court denies the motion to dismiss on this basis.

With regard to the gas odor incident, however, the allegation that he smelled gas on one occasion, without more, does not lead to a reasonable inference that he held a good faith belief

---

[1] Furthermore, several Illinois lower courts as well as federal courts have rejected the notion that the IWA abrogated, preempted, or repealed otherwise existing common law retaliatory discharge claims. *See Barker v. Atl. Pac. Lines*, No. 13 C 1272, 2013 WL 4401382, at *6 (N.D. Ill. Aug. 14, 2013); *Stiles v. Int'l Bioresources*, 726 F. Supp. 2d 944, 950–51 (N.D. Ill. 2010); *Callahan v. Edgewater Care & Rehab. Ctr., Inc.*, 872 N.E.2d 551, 554 (Ill. App. Ct. 2007). *But see Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051, 1055 (N.D. Ill. 2007) (holding that IWA abrogated retaliatory discharge claim based on whistleblowing); *Jones v. Dew*, No. 06 C 3577, 2006 WL 3718053, at *3 (N.D. Ill. Dec. 13, 2006) (same). Thus, a plaintiff need not allege a violation of the IWA in order to state a claim for retaliatory discharge. *Callahan*, 872 N.E.2d at 554 ("The fact that individuals discharged in retaliation for reporting illegal activities to their superiors have no right of action under the Whistleblower Act does not compel the conclusion that they have no right of action at all.").

that a crime occurred or that any regulations were violated. To the extent that the retaliatory discharge claim is based on the gas odor incident, the Court grants BonaDent's motion to dismiss and dismisses that part of the claim without prejudice.

## V. Post-Termination Retaliation

Defendants argue that Van Pelt has failed to provide any basis in law for his stand-alone post-termination Retaliation claim in Count V. In response, Van Pelt all but concedes that the law does not support an independent claim for post-termination retaliation because he merely iterates law in support of his retaliatory discharge claim. The Court construes this response as an abandonment of the claim, grants Defendants' motion to dismiss Count V, and dismisses Count V with prejudice. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .")

## VI. Defamation

Van Pelt alleges in Count VI that BonaDent and Bonafiglia defamed him by rating his attitude and ability to get along with others as unsatisfactory and stating that he was ineligible for rehire due to attendance issues in a June 28, 2017, employment verification form.[2] 2d Am. Compl. ¶ 75; *id.*, Ex. 3, 6/28/17 Employment Verification, ECF No. 32-3, at p. 2 (Ex. 3). Van Pelt also alleges in general terms that Defendants defamed him after November 30, 2017, by providing negative reviews to his potential employers that contained "erroneous and non-factual information." *Id.* ¶¶ 32, 39.

---

[2] The June 28, 2017 employment verification form does not indicate that Bonafiglia made the statement. *See id.* Rather, the form was authored by BonaDent's Payroll Administrator, Autumn Jennex. *See id.* The Court thus grants Bonafiglia's motion to dismiss any defamation claim to the extent that it is based on statements made with regard to the June 29, 2017 employment verification.

To prevail on a claim for defamation under Illinois law, a plaintiff must show that "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and . . . this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). A statement is defamatory *per se*—meaning damages are presumed—if its harm to the plaintiff's reputation is "obvious or apparent on its face." *Id.* Illinois courts recognize five categories of statements that are actionable as defamation *per se*, but only two are pertinent to this case: (1) those imputing an inability to perform or want of integrity in the discharge of one's duties of office or employment, and (2) those that prejudice a party, or impute lack of ability, in his or her trade, profession, or business. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006).

By contrast, a statement is defamatory *per quod* if extrinsic facts are needed to establish that the statement is harmful to the plaintiff's reputation. *Myers v. Levy*, 808 N.E.2d 1139, 1147 (Ill. App. Ct. 2004). In an action for defamation *per quod*, damage to the plaintiff's reputation is not presumed, and the plaintiff must prove special damages in order to recover. *Id.*; *Tuite*, 866 N.E.2d at 121.

Van Pelt does not specify whether he is suing Defendants for defamation *per se* or defamation *per quod*. Defendants argue that Van Pelt has failed to state a claim for defamation *per se* because the alleged defamatory statements are capable of an innocent construction. Defendants also assert that his defamation *per quod* claim must be dismissed for failure to plead special damages. The Court addresses each claim in turn.

First, the Court concludes that Van Pelt's allegations do not state a plausible claim for defamation *per se*. Even if a statement falls into one of the *per se* categories, a claim is not actionable if it is reasonably capable of an innocent construction. *Chapski v. Copley Press*, 442

N.E.2d 195, 199 (Ill. 1982). "Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214–15 (Ill. 1996). The innocent construction rule requires a court to consider a written or oral statement in context, giving the words and their implication their natural and obvious meaning. *Id.* If, when so construed, a statement may reasonably be interpreted as asserting something other than what is implicated by the *per se* category, it is not actionable *per se*. *Id.* The Illinois Supreme Court has cautioned, "[t]he rigorous standard of the . . . innocent construction rule favors defendants in *per se* actions in that a nondefamatory interpretation must be adopted if it is reasonable. The tougher standard is warranted because of the presumption of damages in *per se* actions." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996) (internal quotation marks and citation omitted).

For this reason, Illinois courts have been reluctant to find statements by an employer to third parties regarding an employee's past performance in a specific position to be defamatory *per se*. Rather, such statements have been deemed capable of an innocent construction because they can be understood as pertaining to an employee's past performance in a specific position, rather than an employee's general ability to satisfactorily perform in future positions for a different employer. *Id.*; *Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d 225, 236 (Ill. App. Ct. 2015). For example, in *Valentine v. North American Co. for Life & Health Insurance*, a secretary of the defendant company told a third party that the plaintiff was being discharged from the company because "he was a lousy agent," he spent too much money on furniture, he did not devote enough time to his work, and he had not done things for the company that he was obligated to do. 328 N.E.2d 265, 266–67 (Ill. 1974). The court held the statements "did not necessarily imply plaintiff's lack of qualifications or skill in his calling," but could be innocently

18

construed to mean plaintiff did not properly or satisfactorily represent the company or that he had a generally unsatisfactory agency relationship. *Id.* Because this did not imply that the plaintiff was unable to perform his duties as an employee or that he was not qualified in his calling, the court held the statements were not defamatory *per se*. *Id.*

Illinois courts have reached the same conclusion in similar cases. *See Anderson*, 667 N.E.2d at 1302 (holding that a defendant conveying to a prospective employer that plaintiff "did not follow up on assignments" and that "she could not get along with coworkers" could be reasonably construed to mean simply that the plaintiff did not fit in with the organization and failed to perform well in that particular job setting, and was not a comment on her ability to perform in other, future positions); *Dunlap v. Alcuin Montessori Sch.*, 698 N.E.2d 574, 577 (Ill. App. Ct. 1998) (finding the statement that events had "'caused virtually a total breakdown of trust and confidence between [plaintiff] and the Board . . . [and] led the Board to conclude that [plaintiff] is not satisfactorily performing her duties or carrying out the policies of the Board'" could be reasonably construed as assessing plaintiff's failure to perform well in the school's particular job setting, as opposed to her inability to perform well in other, future positions); *Kakuris v. Klein*, 410 N.E.2d 984, 986–87 (Ill. App. Ct. 1980) (holding that statement that plaintiff lacked "achievement in basic goals" and "did not have the qualifications needed to achieve the objectives of the profession," but was "attractive" and "sales-oriented" could be construed as suggesting that plaintiff possessed desirable traits but, for unspecified reasons, failed to adequately perform in his specialized role with his previous employer).

As in the cases noted above, here, the statements at issue are capable of an innocent construction. Van Pelt alleges that BonaDent defamed him by rating his attitude and ability to get along with others as being "unsatisfactory" and stating that he was ineligible for rehire due to

19

attendance issues.  2d Am. Compl. ¶ 75; *id.*, Ex. 3, 6/28/17 Employment Verification, ECF No. 32-3, at p. 2 (Ex. 3).  (Notably, in the same employment verification form, BonaDent rated Van Pelt's performance, honesty, adherence to safety guidelines, and, curiously, attendance as "Satisfactory."  *Id.*, Ex. 3, at 2.)  Van Pelt also generally alleges that Defendants defamed him after November 30, 2017, by providing negative reviews to his potential employers that contained containing "erroneous and non-factual information."  *Id.* ¶¶ 32, 39.  Similar to the statements in *Valentine*, *Anderson*, *Dunlap*, and *Kakuris*, all of these statements reasonably allow an innocent construction that Van Pelt, in his particular position at BonaDent, was unable to get along with others and had attendance issues, rather than that he was unable to perform the duties of his job competently or lacked ability in his profession or in the sales industry.  Because Defendants' statements are capable of an innocent construction, the Court dismisses Van Pelt's defamation *per se* cause of action.

Van Pelt's defamation *per quod* claim fares no better.  "A *per quod* action requires allegations of extrinsic facts showing the defamatory nature of the language, as well as allegations of specific facts establishing the plaintiff's special damages."  *Anderson*, 667 N.E.2d at 1303.  Allegations that a plaintiff "has been damaged monetarily by losing gainful employment and wages" and "has suffered great mental pain and anguish and incurred great expense for the treatment thereof" are too vague to allege special damages.  *Id.* at 1303–04; *see Taradash v. Adelet/Scott–Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993) ("General allegations of damages, such as damages to an individual's health or reputation or general economic loss, are insufficient to state a claim of defamation *per quod*." ).

Here, Van Pelt alleges that, as a result of Defendants' defamatory statements, he "has suffered enormous harm in the form of mental and emotional distress, physical harm, harm to his

reputation, harm to his career[,] and mental anguish." 2d Am. Compl. ¶ 77. Under the governing Illinois law, these assertions are clearly insufficient to allege special damages. Accordingly, the Court grants Defendants' motion to dismiss Van Pelt's defamation *per quod* claim.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss [41]. Counts I, II, III, V, and VI are dismissed in their entirety. Count IV is dismissed in part with regard to the gas incident. The only claim that remains is the Illinois Whistleblower Act claim against Bonafiglia and BonaDent in Count IV relating to his refusal to act in his human resources role and provide documentation with regard to illegal employees. To the extent that he wishes to do so, Plaintiff may file a Third Amended Complaint within fifteen days of the issuance of this Memorandum Opinion and Order that comports with the rulings herein.

**IT IS SO ORDERED.**                                      **ENTERED  5/16/18**

_____
**John Z. Lee**
**United States District Judge**

21